UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 13-CV-24550- WILLIAMS

UNITED STATES OF AMERICA,

           Plaintiff,

v.

One 1972 Beechcraft Model B-58 aircraft,
Serial # TH-223, N228CR,

           Defendant

_____/

## SECOND AMENDED VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

     Plaintiff, United States of America, hereby files this  second amended complaint for forfeiture *in rem* and states as follows:

     1.  This is a civil action for forfeiture *in rem*  against One 1972 Beechcraft Model B-58 aircraft, Serial # TH-223, N228CR,(hereinafter "the defendant aircraft" ).

     2.  This Court has jurisdiction over this action pursuant to Title 28, U.S.C. §§ 1345 and 1355.

     3.  Venue is proper in the Southern District of Florida pursuant to Title 28,U.S.C.§§1355 (A)(b)(1), and 1395(a) because the acts or omissions giving rise to the forfeiture occurred in the Southern District of Florida.

     4.  The defendant aircraft was seized here in the Southern District of Florida on July 25, 2013, from C.R. Aviation Incorporated, 14359 SW 127th Street, Hanger 109 at Tamiami Airport, in Miami, Florida 33186, and is within the jurisdiction of the Court.

     5.  The defendant aircraft is forfeitable pursuant to Title 18, U.S.C. §981(a)(1)(A) as it was involved in a transaction/s, in violation of Title 18, U.S.C.§1960(b)(1)(A) and/or (b)(1)(B),

[Prohibition of Unlicensed Money Transmitting Business], or is property traceable to such property. Additionally, the defendant aircraft is also forfeitable pursuant to Title 21, U.S.C. sections 881(a)(4) and/or (6), as a conveyance that was intended to be used to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of narcotics, and/or because it was purchased with proceeds traceable to an exchange of narcotics.

## FACTUAL BACKGROUND

6.    The funds for the purchase, $230,000. of the defendant aircraft were wire transferred to Powell Aircraft Title Service in Oklahoma City, Oklahoma, by Jezuleima Azuaje, a Venezuelan national, on March 21, 2013, and April 9, 2013, through the Wells Fargo Bank business account of Supsebas Corporation, a Florida corporation based out of Weston, Broward County, Florida, of which Azuaje is the President.

7.    On or about June 3, 2009, Jezuleima Aziaje,a Venezuelan national arrived in Miami, United States pursuant to a B1/B2 visa issued by the U.S Department of States. Her stated purpose for the visit was listed as shopping and tourism. The United States offers a ten-year, multiple entry visa for adult applicants. Most applicants applying for nonimmigrant visas are visitors for business (B1) or tourism (B2). The two categories of visa are usually issued together as a B1/B2 visa. "Business" does not mean gainful employment, but it does include a wide range of business-related activities (meetings, trainings, negotiations) for which you are not being paid while in the United States.

8.    Florida Department of State, Division of Corporations records show that on November 5, 2012, Supsebas Corporation was formed, registered, and listed its address as 4287 Greenbriar Lane, Weston, Florida 33331, a residence in Broward County, which Azuaje leased

during her Florida stay in 2013. The President of that corporation is listed as Jezuleima Azuaje (hereafter Azuaje), a Venezuelan citizen, who resided during all relevant times at the 4287 Greenbriar Lane residence..

9.      From November 5, 2012 through June 2013,  Jezuleima Azuaje*, and/or*  Supsebas Corporation were acting as money transmitting businesses affecting interstate or foreign commerce, which businesses were being operated, controlled, managed, supervised, directed, owned all or in part by Jezuleima Azuaje, in violation of Title 18,U.S.C. Section1960(b)(1)(A) &(B), since neither of them complied with the registration requirements under Florida law, or federal law under Title 31, U.S.C. Section 5330, and the regulations prescribed under that section.

10.      On January 11, 2013, a Wells Fargo Bank business account #1568087884 in the name of Supsebas Corporation was opened.  Bank records listed the *sole* signer on the business account as Jezuleima T. Azuaje Gamarra. As the President of Supsebas Corporation and the sole signer of the business account, Azuaje owned or controlled the business, was the director or officer of the business, or otherwise participated in the conduct of the affairs of the business.

11.      During all relevant times, Supsebas Corporation also had one-other business account here in the Southern District of Florida, with JP Morgan Chase Bank, also opened on January 11, 2013, besides the business account with Bank of America, where Azuaje was also the sole signer of the account, and which business account was also being used to receive monies from, and send monies to, third parties.

12.      During all relevant times, many wire transfers came in and went out, for both accounts, from/to many locations domestically and various locations throughout the world.

13.     The Wells Fargo Bank opening records describe AZUAJE as a Venezuelan citizen without permanent residency in the United States. The account application form also states that Supsebas' industry as that of "wholesale trade".

14.     On January 14, 2013, an opening deposit of $19,700.00 in U.S. currency, cash, was made by Azuaje into the Wells Fargo business account of Supsebas.

15.     Records from Supsebas' Wells Fargo Bank business account show that from January 2013 through April of 2013, there were multiple-incoming wire transfers, deposits, checks, and subsequent withdrawals, transfers and checks done on behalf of the public, to several individuals and businesses.

16.     Records from Supsebas' Wells Fargo Bank business account also show that additional cash deposits were made therein, all of which were in amounts of under $10,000.00

17.     On March of 2013, two additional deposits constituted the bulk of the deposits into the account.  On March 21, 2013, an incoming wire transfer in the amount of $190,655.00 was received in Supsebas Corporation's business account.  The originator of this wire transfer was documented as Calton Hill Holdings, C.V. via First Caribbean Bank.  Calton Hill Holdings C.V. is a Curacao business entity. On March 25, 2013, an incoming wire transfer in the amount of $249,970.00 was received in Supsebas' business account.  The originator of this wire transfer was documented as Viherca International Inc. Viherca International Inc. is a business entity in Panama.

18.     On March 21, 2013, the date of the $190,655.00 incoming wire transfer from Calton Hill Holdings C.V., Supsebas Corporation sent an outgoing wire transfer in the amount of

$10,000.00 from its Wells Fargo Bank business account to Powell Aircraft Title Service's account at Bank of America.  Powell Aircraft Title Service is an escrow/closing agent for aircraft purchases located in Oklahoma City, Oklahoma.

19.    On April 9, 2013, a second wire transfer in the amount of $220,500.00, was sent from Supsebas' Wells Fargo Bank business account to Powell Aircraft Title Service's Bank of America account #xxxxxxx493.

20.    Records from Powell Aircraft Title Service document an Aircraft Purchase Agreement dated April 8, 2013, for the defendant aircraft with a sales price of $230,000. The agreement lists the seller as Chief Aircraft of America, located at 14359 S.W. 127th Street, Miami, Florida, and the purchaser as Supsebas Corporation, with an address of 4287 Greenbriar Lane, Weston, Florida.  A copy is attached hereto.

21.    A letter dated April 8, 2013, to Powell Aircraft Title Service, signed by Azuaje advised that the $10,000.00 escrow deposit previously sent by Supsebas Corporation on March 21, 2013, was to be used towards the purchase of the defendant aircraft.  The letter further indicated that the aircraft would be placed in a trust, indicating Azuaje was not an American citizen. A copy of the letter is attached.

22.    A specific withdrawal from Supsebas'Wells Fargo Bank business account is reflected by a check dated April 1, 2013, in the amount of $101,000.00, made payable to Jezuleima Azuaje.  On April 4, 2013, this check for $101,000.00 was deposited into Bank of America checking account # xxxxxxxxx5568, the personal account of Azuaje.  Later on April 29, 2013, $22,300.00 from those funds were sent to the Supsebas business account at Chase via

wire, and $14,000.00 from those funds were sent back to the Supsebas business account at Wells Fargo.

23.     On April 10, 2013, another incoming wire transfer from Calton Hill Holdings, C.V. was received in the Wells Fargo business account of Supsebas Corporation, this one in the amount of $50,118.96.

24.     Powell Aircraft Title Service records document the formation on March 25, 2013 of Continent Aircraft Statutory Trust No. 2152 between Aircraft Guaranty Corporation, as Trustee and Aircraft Guaranty Financial Corporation, as Grantor.  Aircraft Guaranty Corporation as Trustee is a citizen of United States. A copy of that trust is attached hereto.

25. Records from Powell Aircraft Title Service document an FAA Aircraft Bill of Sale dated April 12, 2013, listing the purchaser of the defendant aircraft as Jezuleima Thais Azuaje Gamarra, and the seller as Chief Aircraft of America Inc.

26.     Records from Powell Aircraft Title Service also document an Aircraft Dry Lease Agreement dated April 23, 2013, between Aircraft Guaranty Corp as Trustee for Continent Aircraft Statutory Trust No. 2152 and Air's People Services, C.A., a Venezuelan corporation regarding the lease of N228CR with open ended terms as to the duration. The lease agreement further listed the defendant aircraft's location as being in Caracas, Venezuela.

27.     Records for Powell Aircraft Title Service include an Accession Agreement for Continent Aircraft Statutory Trust No. 2152 dated April 23, 2013 naming Jezuleima Thais Azuaje, as successor beneficiary.

28.     Powell Aircraft Title Service records also document an FAA Aircraft Bill of Sale dated May 17, 2013, regarding the defendant aircraft.[see #28], above, listing the purchaser as

Aircraft Guaranty Corporation, Trustee for Continent Aircraft Statutory Trust No. 2152, and the seller as Jezuleima Thais Azuaje Gamarra.

## FIRST CLAIM FOR FORFEITURE

*Title 18,U.S.C. § 981(b)(1)(A) and 18 U.S.C. § 1960(b)(1)(A)*

29.   Plaintiff realleges and incorporates by reference paragraphs 6 through 28 as if fully set forth herein.

30.   Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture: "Any property, real or personal, involved in a transaction or attempted transaction in violation of section ...1960 of this title, or any property traceable to such property."

31.   Title 18, United States Code, Section 1960 prohibits unlicensed money transmitting businesses. Title 18, United States Code, Section 1960(b)(1) (A) and (b)(2)  provide the following definitions for purposes of the section:

(1) the term "unlicensed money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and—

   (A) is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether  or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;

(2) the term "money transmitting" includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier...

32.   Supsebas Corporation and Jezuleima Azuaje were money transmitting businesses affecting interstate or foreign commerce.

33.  The operation of a money transmitting business in Florida, without a license, is misdemeanor or felony under Florida State law.  The Florida Money Transmitter's Code, Fla.

7

Stat. 560.101- 560. 408, prohibits a person from engaging in the business of a money transmitter without registering with the Office of Financial Regulation.  Fla. Stat. § 560.125(1).  Violation of the money transmitter statute is a felony.  Specifically, the penalties for violating this statute are as follows: (1) if currency or payment instruments exceed $300 but are less than $20,000 in any 12-month period, the person has committed a third degree felony; (2) if currency or payment instruments total or exceed $20,000 but are less than $100,000 in any 12-month period, the person has committed a second degree felony; and (3) if currency or payment instruments total or exceed $100,000, the person has committed a first degree felony.  Fla. Stat. §560.125(5)(a)-(c).

34.    Under Florida Money Transmitters' Code, the term "money transmitter" includes any person located in or doing business in Florida who acts as a payment instrument seller, foreign currency exchanger, check casher, funds transmitter, or deferred presentment provider. Fla. Stat. §560.103(11).  The term "funds transmitter" includes "*any person* who engages in the receipt of currency or payment instruments for the purpose of transmission by any means, including transmissions within this country or to or from locations outside this country, by wire, facsimile, electronic transfer, courier, or otherwise."  Fla. Stat. §560.103(10).

35.     During all relevant time periods, Jezuleima Azuaje, and Supsebas Corporation, operated without an appropriate money transmitting license in Florida. Azuaje owned and managed Supsebas Corporation without an appropriate money transmitting license in Florida.

36.    A check with the Florida Office of Financial Regulation, the agency responsible for issuing money service business licenses, shows that neither Jezuleima Azuaje, nor Supsebas Corporation have a Money Service Business license as required under the provisions of Chapter

8

560, Florida Statutes. See copy of the certificate attached hereto. As of December 18, 2013, the Florida Office of Financial Regulation website, http://www.flofr.com/licensing/download.htm also shows that neither Jezuleima Azuaje, nor Supsebas Corporation were registered as money transmitting business within the State of Florida.

37.   The defendant aircraft is forfeitable pursuant to Title 18, U.S.C. §981(a)(1)(A).

## SECOND CLAIM FOR FORFEITURE

### Title 18,U.S.C. § 981(a)(1)(A) and 18 U.S.C. § 1960(b)(1)(B)

38.   Plaintiff realleges and incorporates by reference paragraphs 6 through 31 as if fully set forth herein.

39.   Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture:

"Any property, real or personal, involved in a transaction or attempted transaction in violation of section ...1960 of this title, or any property traceable to such property."

40.   Title 18, United States Code, Section 1960 prohibits unlicensed money transmitting businesses. Title 18, United States Code, Section 1960(b)(1) (A) and (b)(2)  provide the following definitions for purposes of the section:

(1) the term "unlicensed money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and—

  (A) is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;

  (B) fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed thereunder.

(2) the term "money transmitting" includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier...

41.   Supsebas Corporation and Jezuleima Azuaje were money transmitting businesses

affecting interstate or foreign commerce.

42.   Title 31, United States Code, Section 5330, provides that money transmitting

businesses must be registered with the Secretary of the Treasury, and that agents of a money

transmitting business can be treated as a money transmitting business.

43.    Title, 31, United States Code, Section 5330 (d) provides the following definitions

for purposes of the section:

(1) Money transmitting business. — The term "money transmitting business" means any
 business other than the United States Postal Service which —

provides check cashing, *currency exchange*, or money transmitting or remittance services, or
issues or redeems money orders, travelers' checks, and other similar instruments of any other
person who engages as a business in the *transmission of funds*, including any person who
engages as a business in an *informal money transfer system* or any network of people who
engage as a business in facilitating the transfer of money domestically or internationally outside
of the conventional financial institutions system; . . .

(2) Money transmitting service.—The term "money transmitting service" includes
accepting currency or funds denominated *in the currency of any country* and transmitting the
currency or funds or the value of the currency or funds, *by any means* through a financial agency
or institution, a Federal reserve bank or other facility of the Board of Governors of the Federal
Reserve System, or an electronic funds transfer network.

44.   During all relevant times, Supsebas Corporation and Jezuleima Azuaje were acting

as  money transmitting businesses within the meaning of Title 31, U.S.C. § 5330(d).

45.    Neither Supsebas Corporation nor Jezuleima Azuaje were registered with the

Secretary of the Treasury as a money transmitting business, at any time. According to FinCEN

records, no registration by them has been filed for any time period.  As of December 18, 2013,

according to the FinCEN website at http://www.msb.gov/guidance/msbstateselector.php, which contains lists of businesses licensed as money transmitters with FinCEN in Florida and the District of Columbia,  neither Supsebas Corporation nor Jezuleima Azuaje were registered as money transmitting businesses with FinCEN. See printout attached hereto.

46.  The defendant aircraft is forfeitable pursuant to Title 18, U.S.C. § 981(a)(1)(A).

## THIRD CLAIM FOR FORFEITURE
### Title 21,U.S.C.§881(a)(4) and/or (a)(6)

47.    Plaintiff realleges and incorporates by reference paragraphs 6 through 46 as if fully set forth herein.

48.   The funds used to purchase the defendant plane originated from multiple-bank accounts  owned by third parties located in different geographical areas, or countries, Panama and Curacao. See paragraphs number 17-23 of this complaint.

49.   This type of aircraft-purchase financing is typical of drug-trafficking organizations who wish to conceal their ownership interest in the aircraft.

50.   Drug-trafficking organizations typically seek aircraft such as the defendant aircraft to facilitate their drug-smuggling activities. These aircraft, like the defendant aircraft, have small-twin engines, high performance, that are easy to conceal in hangars and small airports. They also must also have sufficient cargo capacity to carry substantial loads, more than a typical single engine without any structural modifications, and be capable of landing and taking off in short landing strips such as those in remote-rural areas.

51.   Such aircraft also have mid to high hours ratings because that has a significant impact on the cost. The higher the rating level the less expensive the purchase price.

52.    The defendant aircraft is also forfeitable pursuant to Title 21, U.S.C. sections 881(a)(4) and/or (6).

**WHEREFORE**, Plaintiff, United States of America requests, that any and all persons having any claim to the defendant aircraft be directed to file and serve their verified claims and answers as required by Rule G(5), of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, or suffer default thereof, and further requests that the Court declare the defendant properties condemned and forfeit to the United States of America, and that Plaintiff have such other and further relief as may be just and proper together with any costs and

expenses incurred in this action.

Respectively submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY: s/William H. Beckerleg, Jr.
WILLIAM H. BECKERLEG, JR.
ASSISTANT U.S. ATTORNEY
500 E. Broward Blvd., Suite 700
Ft. Lauderdale, Florida 33394
Tel: (954) 660-5774

12

Fax: (954) 356-7180
Fla Bar No. A550007

## **VERIFICATION**

Pursuant to Title 28, U.S.C. §1746, I declare under penalty of perjury that, I , Warren Rogers,

Special Agent for the Department of treasury, Internal Revenue Service, have read the Second

Amended Complaint for Forfeiture <u>In</u> <u>Rem</u> and state that the contents are true to the best of my

knowledge and belief.

WARREN ROGERS
SPECIAL AGENT–IRS

13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 13-CV-24550- WILLIAMS

UNITED STATES OF AMERICA,

        Plaintiff,

v.

One 1972 Beechcraft Model B-58 aircraft,
Serial # TH-223, N228CR,

        Defendant
_____/

### SECOND AMENDED VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

    Plaintiff, United States of America, hereby files this  second amended complaint for

forfeiture *in rem* and states as follows:

    1.   This is a civil action for forfeiture *in rem*  against One 1972 Beechcraft Model B-58

aircraft, Serial # TH-223, N228CR,(hereinafter "the defendant aircraft" ).

    2.   This Court has jurisdiction over this action pursuant to Title 28, U.S.C. §§ 1345 and

1355.

    3.   Venue is proper in the Southern District of Florida pursuant to Title 28,U.S.C.§§1355

(A)(b)(1), and 1395(a) because the acts or omissions giving rise to the forfeiture occurred in the

Southern District of Florida.

    4.   The defendant aircraft was seized here in the Southern District of Florida on July

25, 2013, from C.R. Aviation Incorporated, 14359 SW 127th Street, Hanger 109 at Tamiami

Airport, in Miami, Florida 33186, and is within the jurisdiction of the Court.

1

5.     The defendant aircraft is forfeitable pursuant to Title 18, U.S.C. §981(a)(1)(A) as it was involved in a transaction/s, in violation of Title 18, U.S.C.§1960(b)(1)(A) and/or (b)(1)(B), [Prohibition of Unlicensed Money Transmitting Business], or is property traceable to such property. Additionally, the defendant aircraft is also forfeitable pursuant to Title 21, U.S.C. sections 881(a)(4) and/or (6), as a conveyance that was intended to be used to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of narcotics, and/or because it was purchased with proceeds traceable to an exchange of narcotics.

### FACTUAL BACKGROUND

6.     The funds for the purchase, $230,000. of the defendant aircraft were wire transferred to Powell Aircraft Title Service in Oklahoma City, Oklahoma, by Jezuleima Azuaje, a Venezuelan national, on March 21, 2013, and April 9, 2013, through the Wells Fargo Bank business account of Supsebas Corporation, a Florida corporation based out of Weston, Broward County, Florida, of which Azuaje is the President.

7.     On or about June 3, 2009, Jezuleima Aziaje,a Venezuelan national arrived in Miami, United States pursuant to a B1/B2 visa issued by the U.S Department of States. Her stated purpose for the visit was listed as shopping and tourism. The United States offers a ten-year, multiple entry visa for adult applicants. Most applicants applying for nonimmigrant visas are visitors for business (B1) or tourism (B2). The two categories of visa are usually issued together as a B1/B2 visa. "Business" does not mean gainful employment, but it does include a wide range of business-related activities (meetings, trainings, negotiations) for which you are not being paid while in the United States.

2

8.    Florida Department of State, Division of Corporations records show that on November 5, 2012, Supsebas Corporation was formed, registered, and listed its address as 4287 Greenbriar Lane, Weston, Florida 33331, a residence in Broward County, which Azuaje leased during her Florida stay in 2013. The President of that corporation is listed as Jezuleima Azuaje (hereafter Azuaje), a Venezuelan citizen, who resided during all relevant times at the 4287 Greenbriar Lane residence..

9.    From November 5, 2012 through June 2013,  Jezuleima Azuaje, and/or  Supsebas Corporation were acting as money transmitting businesses affecting interstate or foreign commerce, which businesses were being operated, controlled, managed, supervised, directed, owned all or in part by Jezuleima Azuaje, in violation of Title 18,U.S.C. Section1960(b)(1)(A) &(B), since neither of them complied with the registration requirements under Florida law, or federal law under Title 31, U.S.C. Section 5330, and the regulations prescribed under that section.

10.    On January 11, 2013, a Wells Fargo Bank business account #1568087884 in the name of Supsebas Corporation was opened.  Bank records listed the *sole* signer on the business account as Jezuleima T. Azuaje Gamarra. As the President of Supsebas Corporation and the sole signer of the business account, Azuaje owned or controlled the business, was the director or officer of the business, or otherwise participated in the conduct of the affairs of the business.

11.    During all relevant times, Supsebas Corporation also had one-other business account here in the Southern District of Florida, with JP Morgan Chase Bank, also opened on January 11, 2013, besides the business account with Bank of America, where Azuaje was also the sole signer of the account, and which business account was also being used to receive monies

3

from, and send monies to, third parties.

12.     During all relevant times, many wire transfers came in and went out, for both accounts, from/to many locations domestically and various locations throughout the world.

13.     The Wells Fargo Bank opening records describe AZUAJE as a Venezuelan citizen without permanent residency in the United States. The account application form also states that Supsebas' industry as that of "wholesale trade".

14.     On January 14, 2013, an opening deposit of $19,700.00 in U.S. currency, cash, was made by Azuaje into the Wells Fargo business account of Supsebas.

15.     Records from Supsebas' Wells Fargo Bank business account show that from January 2013 through April of 2013, there were multiple-incoming wire transfers, deposits, checks, and subsequent withdrawals, transfers and checks done on behalf of the public, to several individuals and businesses.

16.     Records from Supsebas' Wells Fargo Bank business account also show that additional cash deposits were made therein, all of which were in amounts of under $10,000.00

17.     On March of 2013, two additional deposits constituted the bulk of the deposits into the account.  On March 21, 2013, an incoming wire transfer in the amount of $190,655.00 was received in Supsebas Corporation's business account.  The originator of this wire transfer was documented as Calton Hill Holdings, C.V. via First Caribbean Bank.  Calton Hill Holdings C.V. is a Curacao business entity. On March 25, 2013, an incoming wire transfer in the amount of $249,970.00 was received in Supsebas' business account.  The originator of this wire transfer was documented as Viherca International Inc. Viherca International Inc. is a business entity in

4

Panama.

18.     On March 21, 2013, the date of the $190,655.00 incoming wire transfer from Calton Hill Holdings C.V., Supsebas Corporation sent an outgoing wire transfer in the amount of $10,000.00 from its Wells Fargo Bank business account to Powell Aircraft Title Service's account at Bank of America. Powell Aircraft Title Service is an escrow/closing agent for aircraft purchases located in Oklahoma City, Oklahoma.

19.     On April 9, 2013, a second wire transfer in the amount of $220,500.00, was sent from Supsebas' Wells Fargo Bank business account to Powell Aircraft Title Service's Bank of America account #xxxxxxx493.

20.     Records from Powell Aircraft Title Service document an Aircraft Purchase Agreement dated April 8, 2013, for the defendant aircraft with a sales price of $230,000. The agreement lists the seller as Chief Aircraft of America, located at 14359 S.W. 127th Street, Miami, Florida, and the purchaser as Supsebas Corporation, with an address of 4287 Greenbriar Lane, Weston, Florida. A copy is attached hereto.

21.     A letter dated April 8, 2013, to Powell Aircraft Title Service, signed by Azuaje advised that the $10,000.00 escrow deposit previously sent by Supsebas Corporation on March 21, 2013, was to be used towards the purchase of the defendant aircraft. The letter further indicated that the aircraft would be placed in a trust, indicating Azuaje was not an American citizen. A copy of the letter is attached.

22.     A specific withdrawal from Supsebas'Wells Fargo Bank business account is reflected by a check dated April 1, 2013, in the amount of $101,000.00, made payable to Jezuleima Azuaje. On April 4, 2013, this check for $101,000.00 was deposited into Bank of

5

America checking account # xxxxxxxxx5568, the personal account of Azuaje. Later on April 29, 2013, $22,300.00 from those funds were sent to the Supsebas business account at Chase via wire, and $14,000.00 from those funds were sent back to the Supsebas business account at Wells Fargo.

23.     On April 10, 2013, another incoming wire transfer from Calton Hill Holdings, C.V. was received in the Wells Fargo business account of Supsebas Corporation, this one in the amount of $50,118.96.

24.     Powell Aircraft Title Service records document the formation on March 25, 2013 of Continent Aircraft Statutory Trust No. 2152 between Aircraft Guaranty Corporation, as Trustee and Aircraft Guaranty Financial Corporation, as Grantor. Aircraft Guaranty Corporation as Trustee is a citizen of United States. A copy of that trust is attached hereto.

25. Records from Powell Aircraft Title Service document an FAA Aircraft Bill of Sale dated April 12, 2013, listing the purchaser of the defendant aircraft as Jezuleima Thais Azuaje Gamarra, and the seller as Chief Aircraft of America Inc.

26.     Records from Powell Aircraft Title Service also document an Aircraft Dry Lease Agreement dated April 23, 2013, between Aircraft Guaranty Corp as Trustee for Continent Aircraft Statutory Trust No. 2152 and Air's People Services, C.A., a Venezuelan corporation regarding the lease of N228CR with open ended terms as to the duration. The lease agreement further listed the defendant aircraft's location as being in Caracas, Venezuela.

27.     Records for Powell Aircraft Title Service include an Accession Agreement for Continent Aircraft Statutory Trust No. 2152 dated April 23, 2013 naming Jezuleima Thais Azuaje, as successor beneficiary.

6

28.   Powell Aircraft Title Service records also document an FAA Aircraft Bill of Sale dated May 17, 2013, regarding the defendant aircraft.[see #28], above, listing the purchaser as Aircraft Guaranty Corporation, Trustee for Continent Aircraft Statutory Trust No. 2152, and the seller as Jezuleima Thais Azuaje Gamarra.

## FIRST CLAIM FOR FORFEITURE

### *Title 18,U.S.C. § 981(b)(1)(A) and 18 U.S.C. § 1960(b)(1)(A)*

29.   Plaintiff realleges and incorporates by reference paragraphs 6 through 28 as if fully set forth herein.

30.   Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture:

"Any property, real or personal, involved in a transaction or attempted transaction in violation of section ...1960 of this title, or any property traceable to such property."

31.   Title 18, United States Code, Section 1960 prohibits unlicensed money transmitting businesses. Title 18, United States Code, Section 1960(b)(1) (A) and (b)(2)  provide the following definitions for purposes of the section:

(1) the term "unlicensed money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and—

    (A) is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether  or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;

(2) the term "money transmitting" includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier...

32.    Supsebas Corporation and Jezuleima Azuaje were money transmitting businesses affecting interstate or foreign commerce.

33.   The operation of a money transmitting business in Florida, without a license, is misdemeanor or felony under Florida State law.  The Florida Money Transmitter's Code, Fla. Stat. 560.101- 560. 408, prohibits a person from engaging in the business of a money transmitter without registering with the Office of Financial Regulation.  Fla. Stat. § 560.125(1).  Violation of the money transmitter statute is a felony.  Specifically, the penalties for violating this statute are as follows: (1) if currency or payment instruments exceed $300 but are less than $20,000 in any 12-month period, the person has committed a third degree felony; (2) if currency or payment instruments total or exceed $20,000 but are less than $100,000 in any 12-month period, the person has committed a second degree felony; and (3) if currency or payment instruments total or exceed $100,000, the person has committed a first degree felony.  Fla. Stat. §560.125(5)(a)-(c).

34.   Under Florida Money Transmitters' Code, the term "money transmitter" includes any person located in or doing business in Florida who acts as a payment instrument seller, foreign currency exchanger, check casher, funds transmitter, or deferred presentment provider. Fla. Stat. §560.103(11).  The term "funds transmitter" includes "*any person* who engages in the receipt of currency or payment instruments for the purpose of transmission by any means, including transmissions within this country or to or from locations outside this country, by wire, facsimile, electronic transfer, courier, or otherwise."  Fla. Stat. §560.103(10).

8

35.     During all relevant time periods, Jezuleima Azuaje, and Supsebas Corporation, operated without an appropriate money transmitting license in Florida. Azuaje owned and managed Supsebas Corporation without an appropriate money transmitting license in Florida.

36.     A check with the Florida Office of Financial Regulation, the agency responsible for issuing money service business licenses, shows that neither Jezuleima Azuaje, nor Supsebas Corporation have a Money Service Business license as required under the provisions of Chapter 560, Florida Statutes. See copy of the certificate attached hereto. As of December 18, 2013, the Florida Office of Financial Regulation website, http://www.flofr.com/licensing/download.htm also shows that neither Jezuleima Azuaje, nor Supsebas Corporation were registered as money transmitting business within the State of Florida.

37.   The defendant aircraft is forfeitable pursuant to Title 18, U.S.C. §981(a)(1)(A).

### SECOND CLAIM FOR FORFEITURE

Title 18,U.S.C. § 981(a)(1)(A) and 18 U.S.C. § 1960(b)(1)(B)

38.     Plaintiff realleges and incorporates by reference paragraphs 6 through 31 as if fully set forth herein.

39.   Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture: "Any property, real or personal, involved in a transaction or attempted transaction in violation of section ...1960 of this title, or any property traceable to such property."

40.     Title 18, United States Code, Section 1960 prohibits unlicensed money transmitting businesses. Title 18, United States Code, Section 1960(b)(1) (A) and (b)(2)  provide the following definitions for purposes of the section:

9

(1) the term "unlicensed money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and—

(A) is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;

(B) fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed thereunder.

(2) the term "money transmitting" includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier...

41.    Supsebas Corporation and Jezuleima Azuaje were money transmitting businesses affecting interstate or foreign commerce.

42.    Title 31, United States Code, Section 5330, provides that money transmitting businesses must be registered with the Secretary of the Treasury, and that agents of a money transmitting business can be treated as a money transmitting business.

43.    Title, 31, United States Code, Section 5330 (d) provides the following definitions for purposes of the section:

(1) Money transmitting business. — The term "money transmitting business" means any business other than the United States Postal Service which —

provides check cashing, *currency exchange*, or money transmitting or remittance services, or issues or redeems money orders, travelers' checks, and other similar instruments of any other person who engages as a business in the *transmission of funds*, including any person who engages as a business in an *informal money transfer system* or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial institutions system; . . .

(2) Money transmitting service.—The term "money transmitting service" includes accepting currency or funds denominated *in the currency of any country* and transmitting the

10

currency or funds or the value of the currency or funds, *by any means* through a financial agency or institution, a Federal reserve bank or other facility of the Board of Governors of the Federal Reserve System, or an electronic funds transfer network.

44.   During all relevant times, Supsebas Corporation and Jezuleima Azuaje were acting as  money transmitting businesses within the meaning of Title 31, U.S.C. § 5330(d).

45.   Neither Supsebas Corporation nor Jezuleima Azuaje were registered with the Secretary of the Treasury as a money transmitting business, at any time. According to FinCEN records, no registration by them has been filed for any time period.  As of December 18, 2013, according to the FinCEN website at http://www.msb.gov/guidance/msbstateselector.php, which contains lists of businesses licensed as money transmitters with FinCEN in Florida and the District of Columbia,  neither Supsebas Corporation nor Jezuleima Azuaje were registered as money transmitting businesses with FinCEN. See printout attached hereto.

46.   The defendant aircraft is forfeitable pursuant to Title 18, U.S.C. § 981(a)(1)(A).

## THIRD CLAIM FOR FORFEITURE
### Title 21,U.S.C.§881(a)(4) and/or (a)(6)

47.      Plaintiff realleges and incorporates by reference paragraphs 6 through 46 as if fully set forth herein.

48.   The funds used to purchase the defendant plane originated from multiple-bank accounts  owned by third parties located in different geographical areas, or countries, Panama and Curacao. See paragraphs number 17-23 of this complaint.

49.   This type of aircraft-purchase financing is typical of drug-trafficking organizations who wish to conceal their ownership interest in the aircraft.

11

50.  Drug-trafficking organizations typically seek aircraft such as the defendant aircraft to facilitate their drug-smuggling activities. These aircraft, like the defendant aircraft, have small-twin engines, high performance, that are easy to conceal in hangars and small airports. They also must also have sufficient cargo capacity to carry substantial loads, more than a typical single engine without any structural modifications, and be capable of landing and taking off in short landing strips such as those in remote-rural areas.

51.  Such aircraft also have mid to high hours ratings because that has a significant impact on the cost. The higher the rating level the less expensive the purchase price.

52.  The defendant aircraft is also forfeitable pursuant to Title 21, U.S.C. sections 881(a)(4) and/or (6).

**WHEREFORE**, Plaintiff, United States of America requests, that any and all persons having any claim to the defendant aircraft be directed to file and serve their verified claims and answers as required by Rule G(5), of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, or suffer default thereof, and further requests that the Court declare the defendant properties condemned and forfeit to the United States of America, and that Plaintiff have such other and further relief as may be just and proper together with any costs and

expenses incurred in this action.

Respectively submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY: s/William H. Beckerleg, Jr.
WILLIAM H. BECKERLEG, JR.
ASSISTANT U.S. ATTORNEY
500 E. Broward Blvd., Suite 700
Ft. Lauderdale, Florida 33394
Tel: (954) 660-5774
Fax: (954) 356-7180
Fla Bar No. A550007

## VERIFICATION

Pursuant to Title 28, U.S.C. §1746, I declare under penalty of perjury that, I , Warren Rogers,

Special Agent for the Department of treasury, Internal Revenue Service, have read the Second

Amended Complaint for Forfeiture In Rem and state that the contents are true to the best of my

knowledge and belief.

WARREN ROGERS
SPECIAL AGENT–IRS

13

**AIRCRAFT PURCHASE AGREEMENT**

To:

Date __04-08-2013.__

PLEASE ACCEPT OUR OFFER TO PURCHASE THE AIRCRAFT PRODUCTS AND/OR OTHER ITEMS SPECIFIED BELOW SUBJECT TO THE TERMS AND CONDITIONS SET FORTH IN THIS ORDER, INCLUDING THE TERMS AND CONDITIONS ON THE REVERSE SIDE:

| YEAR | MODEL | FAA NUMBER | AIRCRAFT SERIAL NUMBER | ENGINE SERIAL NUMBERS |
|------|-------|------------|------------------------|------------------------|
| 1972 | B-58 | N 228 CR | TH-223 | 830998-R  810864-R |

SPECIFICATIONS:

| | | |
|---|---|---|
| TOTAL SELLING PRICE | $ 230000 | 00 |
| LESS: TRADE IN | | |
| SUB-TOTAL | $ | |
| DELIVERY COST | | |
| LICENSE, TRANSFER, REGISTRATION | | |
| SUB-TOTAL | $ | |
| STATE & LOCAL TAXES | | |
| TOTAL SALE | $ 230.000 | 00 |
| CASH DEPOSIT WITH ORDER | | |
| PROGRESS PAYMENTS | | |
| TOTAL CREDIT TO SALE | $ | |
| CASH DUE ON DELIVERY | $ | |

DELIVERY:

TRADE-IN INFORMATION:
MAKE/MODEL
REG. NO. _____ SER. NO. _____
HOURS: AIRFRAME _____ ENGINES _____

☑ **USED AIRCRAFT**  Purchaser accepts the aircraft "AS IS" as that term is defined in paragraph 7(a) on the reverse side hereof.

☐ **NEW AIRCRAFT**  Aircraft is sold subject to a New Aircraft Limited Warranty (including pass through warranties referenced therein), a copy of which is annexed hereto and made a part hereof. Purchaser has read and understands the warranty disclaimer set forth in paragraph 7(b) on the reverse side hereof and accepts the limitations stated therein and in the attached New Aircraft Limited Warranty (and pass through warranties).

**SELLER**
Company: Chief Aircraft of America
Address: 14359 SW 127 St
City/State/Zip: Miami FL 33196

NOT BINDING UNTIL ACCEPTED BELOW.

By: _____ Title: President

**PURCHASER**
Signed: K. _____
Name: SUOSEBAS CORP
Address: 4287 Greenbiar Ln
City/State/Zip: Weston FL 33331
Phone: _____ Resale Tax # _____

April 8, 2013

Powell Aircraft Title Service
10400 South Greenbriar Place
Suite103
Oklahoma City, OK 73159

Re: Funds release

Denise,
This is authorize the $10,000.USD in escrow sent by Supsebas Corp. to be used for the
purchase of the Baron 58, Reg. # N228CR.

Once the title search is complete please proceed to transfer the funds to Miguel Rodriguez of
Chief Aircraft of America, Inc. and finalize the sale.

The aircraft is going to be placed with a trust with Luis Caballero, as I am not an American
citizen. He will be contacting you soon with all of the information to register the aircraft with a
new tail number and to transfer ownership .

If you have any questions or doubts please contact Miguel Rodriguez at 786-897-0310.

Thank you for your assistance.

Jezureima Azuaje
President
Supsebas Corp.
4287 Greenbrair Lane
Weston, FL 33327

# CONTINENT AIRCRAFT STATUTORY TRUST NO. 2152

## DECLARATION OF TRUST

### Between

### Aircraft Guaranty Corporation
### as TRUSTEE

### and

### Aircraft Guaranty Financial Corporation
### as GRANTOR

FILED WITH FAA
AIRCRAFT REGISTRATION BR
2013 MAY 17  PM 12 00
OKLAHOMA CITY
OKLAHOMA

Copyright Notice

The format and content of the material contained herein is the proprietary information of Aircraft Guaranty
Holdings LLC, and cannot be copied, reproduced, transmitted or communicated in any medium nor may any
information contained hereon be faxed or transmitted over the Internet or other electronic media without the
express prior written consent of Aircraft Guaranty Holdings, LLC.

TABLE OF CONTENTS

Page 1 thru 3

Page

DEFINITIONS ........................................................................................................4
    1.1    Defined Terms ............................................................................................5
    1.2    Singular to Include Plural ..........................................................................5

ESTABLISHMENT OF TRUST .............................................................................5
    2.1    Appointment of the Trustee ......................................................................5
    2.2    Trust Agreement Acceptance ....................................................................5
    2.3    Representations and Warranties of the Grantor and Subsequent Transferor ..........6
    2.4    Activities ...................................................................................................6
    2.5    Office .........................................................................................................6
    2.6    Situs of Trust ............................................................................................6
    2.7    Name .........................................................................................................6

TRUST CERTIFICATES AND TRANSFER OF INTEREST ................................6
    3.1    Issuance of Trust Certificate ....................................................................6
    3.2    Registration and Transfer of Certificates ................................................7
    3.3    Lost, Stolen, Mutilated or Destroyed Certificates ..................................7
    3.4    Limitations on Transfer of Trust Certificate ...........................................7
    3.5    Assignment of Right to Distributions ......................................................7

CONCERNING THE BENEFICIARY .....................................................................8
    4.1    Restrictions on Beneficiary's Actions .....................................................8
    4.2    Other Expenses Liabilities of the Trust ...................................................8

CONCERNING THE TRUSTEE ..............................................................................8
    5.1    Status. .......................................................................................................8
    5.2    Acceptance of Trustee and Duties ...........................................................8
    5.3    Furnishing of Documents .........................................................................9
    5.4    Reliance; Advice of Counsel ....................................................................9
    5.5    Not Acting in Individual Capacity ...........................................................10
    5.6    Indemnification .........................................................................................10

AUTHORITY AND DUTIES OF THE TRUSTEE .................................................10
    6.1    General Authority .....................................................................................10
    6.2    Specific Authority ....................................................................................10
    6.3    Trustee Duties ..........................................................................................11
    6.4    Limitations on Trustee's Authority .........................................................11
    6.5    Accounting and Reports to the Beneficiary and Others ..........................11
    6.6    Signature of Returns ................................................................................12
    6.7    Notice to Beneficiary ...............................................................................12
    6.8    No Duties Except as Specified in This Agreement or in Instructions .....................12

6.9     No Action Except Under Specified Documents or Instructions ..........................12

COMPENSATION OF TRUSTEE......................................................................................12
7.1     Trustee's Fees and Expenses ..........................................................12
7.2     Lien on Trust Property .....................................................................13
7.3     Payments to the Trustee ..................................................................13

INVESTMENT AND APPLICATION OF TRUST FUNDS................................................13
8.1     Investment of Trust Funds...............................................................13
8.2     Allocations and Distributions..........................................................13
8.3     Method of Payment ..........................................................................14

TERMINATION OF TRUST ...............................................................................................14
9.1     Termination of Trust ........................................................................14
9.2     No Termination by Grantor or Beneficiary ...................................14
9.3     Exercise of Trust Powers After Termination. ...............................14

SUCCESSOR TRUSTEES AND ADDITIONAL TRUSTEES........................................15
10.1    Resignation or Removal of Trustee; Appointment of Successor ..........................15
10.2    Appointment of Additional Trustees...............................................16

MISCELLANEOUS ..............................................................................................................16
11.1    Supplements and Amendments.......................................................16
11.2    Legal Title to Trust Property in Trustee. ......................................16
11.3    Contracts Made by Trustee. ...........................................................16
11.4    Limitations on Rights of Others......................................................16
11.5    Notices...............................................................................................16
11.6    Severability.......................................................................................17
11.7    Separate Counterparts ....................................................................17
11.8    Successors and Assigns....................................................................17
11.9    Headings............................................................................................17
11.10   Not Influenced by Beneficiaries who are not U.S. Citizens or Resident Aliens....17
11.11   Governing Law..................................................................................17
11.12   Grantor Compliance with US Law..................................................17
11.13   Merger of Trusts...............................................................................18

SIGNATURE PAGE...............................................................................................................19

EXHIBITS...............................................................................................................20 thru 24

**TRUST AGREEMENT** ("Agreement") is dated as of March 25, 2013, between Aircraft Guaranty Financial Corporation, a Nevada Corporation, as Grantor, and Aircraft Guaranty Corporation, a Wyoming corporation, as Trustee, in order to document the creation of a trust organized and operated under the Wyoming Statutory Trust Act, Wyoming Statutes Section 4-10-101 et seq., as made applicable to the document by Section 17-23-113 of the Act. The Trustee shall hold and manage all property now or later transferred to the Trustee under this Agreement for the benefit of the beneficiaries subject to the terms, covenants, conditions, purposes and provisions of this document.

## ARTICLE I

### DEFINITIONS

1.1   **Defined Terms.** For all purposes of this Agreement, the capitalized terms are defined as follows:

"*Aircraft*" means those certain airplanes or helicopters, including engines and parts, for which the Trustee holds title for the benefit of Beneficiary, and which shall constitute the Trust Property.

"*Agreement*" means this Trust Agreement, as it may be amended from time to time.

"*Authorized Officer*" means any officer of the Trustee who is as of the relevant time authorized to act for the Trustee in matters relating to, and binding upon, the Trust and whose name appears on a list of such authorized officers furnished by the Trustee as such list may be amended or supplemented from time to time.

"*Beneficiary*" or "*Beneficiaries*" each means the singular or plural, and each means the Grantor and each of the successors in interest as beneficiaries of the Trust pursuant to Article III.

"Business Day" means any day that is not a Saturday, Sunday or any other day on which commercial banking institutions in Jackson, Wyoming, are authorized or obligated by law or executive order to be closed.

"Code" means the Internal Revenue Code of 1986, as it may be amended from time to time and as it may be interpreted under regulations promulgated by the United States Department of the Treasury.

"*Distribution Date*" means the first Business Day following a day on which the Trustee receives funds unless the date is changed by written consent of Beneficiary.

"*Distribution Date Statement*" means the statement described as such in Section 8.2(c) hereof.

"*FAA*" means the United States Department of Transportation, Federal Aviation Administration.

"*Fiscal Year*" means the period of time, regardless of duration, from the date of this Agreement through the next following December 31, and any successive calendar year from each January 1 to the following December 31.

*"Grantor" or "Grantor"* means Aircraft Guaranty Financial Corporation and any successor in interest.

*"Ownership Percentage"* or *"Ownership Interest"* with respect to a Beneficiary means the proportion (expressed as a percentage) of the beneficial Interest in the Trust Property held by such Beneficiary.

*"Periodic Filings"* means submissions that the Trust is required to make with any state or federal regulatory agency or under the Code.

*"Transfer"* means the sale, transfer or other assignment of all of a Beneficiary's right, title and interest in all or a portion of such Beneficiary's beneficial interest in the Trust.

*"Trust"* means the trust established by this Agreement.

*"Trust Certificate"* means a certificate evidencing the Ownership Interest of a Beneficiary in defined Trust Property in substantially the form attached hereto as Exhibit 1 or Exhibit 1A.

*"Trust Property"* means all right, title and interest in any property contributed to the Trust or otherwise acquired or held by the Trust, including without limitation all distributions, payments or proceeds thereon or thereof. Each Beneficiary shall hold beneficial title and interest only in the specific Trust Property designated on the Trust Certificate. The Trust Property, principally, shall be certain Aircraft and the Trust Certificate.

*"Trust Property Related Agreement"* means any instrument or agreement signed by the Trustee affecting Trust Property, including, but not limited to, any lease or any operating agreement, and any financing agreements or insurance agreements.

*"Trustee"* means Aircraft Guaranty Corporation, a Wyoming corporation, not in its individual capacity, but solely as trustee under this Agreement, and any successor trustee hereunder.

    1.2    **Singular to Include Plural.** Unless another meaning is clearly indicated or required by context or circumstances, either singular or plural words shall include the other.

## ARTICLE II

## ESTABLISHMENT OF TRUST

    2.1    **Appointment of the Trustee.** The Grantor appoints the Trustee as trustee of the Trust, to have all the rights, powers and duties set forth herein. The Trustee acknowledges having received in trust from the Grantor the sum of one hundred dollars, constituting the initial Trust Property.

    2.2    **Trust Agreement Acceptance.** The Trustee accepts the Trust created hereby and declares that it will hold the Trust Property in trust subject to the conditions provided in this Agreement for the use and benefit of the Trustor and any successor Beneficiary.

**2.3    Representations and Warranties of the Grantor and Subsequent Transferor.**  The Grantor, and any subsequent transferor transferring property to the Trust, hereby represents and warrants to the Trustee as follows:

(a)  Upon the receipt of the Trust Property by the Trustee, under this Agreement, the Trustee will have good title to the Trust Property free and clear of any lien, except those expressly disclosed to the Trustee.

(b)  This Agreement has been duly and validly authorized, executed and delivered by, and constitutes a valid and binding agreement of the Grantor and any subsequent Transferor in accordance with its terms.

**2.4    Activities.**  The Trust may engage in the following activities:  (i) the ownership, management, registration and leasing of Trust Property, (ii) activities which are necessary, suitable or convenient to accomplish the foregoing, and (iii) such other activities as may be required in connection with conserving the Trust Property and making distributions to the Beneficiaries.

**2.5    Registered Agent and Office.**  The registered agent and street address for the Trust in the State of Wyoming is:  Frontier Registered Agency Services LLC, 199 East Pearl, Suite 101, Jackson, Wyoming 83001.  The address of the Trust's principle office in the United States is POB 2549 (2058 FM 356 North), Onalaska, Texas 77360.  All records of the Trust required by the Act will be maintained at the principal office.  The Trustee may at any time alter the location of the Trust's principal office.

**2.6    Situs of Trust.**  The Trust will be administered in the State of Wyoming.

**2.7    Name.**    The Trust created hereby shall be known as Continent Aircraft Statutory Trust No. 2152, which name shall be used for describing this Trust under the relevant Uniform Commercial Code, and in which name the Trustee may conduct business, make and execute mortgages, leases, contracts and other instruments necessary to acquire, mortgage, lease, sell and transfer Trust Property or other property, and sue and be sued.

### ARTICLE III

### TRUST CERTIFICATES AND TRANSFER OF INTEREST

**3.1    Issuance of Trust Certificate.**

(a)    As of the date hereof, the Trustee has issued and delivered to the Beneficiary a Trust Certificate in the name of the Beneficiary evidencing a one hundred percent Ownership Percentage in the Trust.

(b)    Each Trust Certificate shall be executed by manual signature on behalf of the Trustee by one of its Authorized Officers.

**3.2    Registration and Transfer of Certificates.**

page 6 of 24

(a)     The Trustee shall maintain at its office, or at the office of any agent appointed by it and approved in writing by the Beneficiary at the time of such appointment, a record for the registration of issued Trust Certificates and the Transfer of Trust Certificates. Only persons listed as Beneficiaries on the registration record shall be entitled to the rights as Beneficiaries.

(b)     The registered owner of any Trust Certificate as recorded in the register of Trust Certificates may Transfer all or any portion of the beneficial interest in the Trust Property evidenced by such Trust Certificate upon surrender thereof to the Trustee accompanied by the documents required by Section 3.4 hereof.  Such Transfer may be made by the registered owner in person or by an attorney-in-fact duly authorized in writing upon surrender of the Trust Certificate to the Trustee accompanied by a written instrument of Transfer and with such signature guarantees and evidence of authority of the persons signing the instrument of Transfer as the Trustee may reasonably require. Promptly upon the receipt of such documents and receipt by the Trustee of the transferor's Trust Certificate, the Trustee shall record the name of such transferee as a Beneficiary and its Ownership Percentage in the Trust Certificate register and issue, execute and deliver to such Beneficiary or Beneficiaries a Trust Certificate evidencing such Ownership Percentage in the Trust Property.  In the event a transferor transfers only a portion of its beneficial interest in the Trust Property, the Trustee shall register and issue, to such transferor a new Trust Certificate evidencing such transferor's new Ownership Percentage in the Trust Property.  Subsequent to a Transfer and upon the issuance of the new Trust Certificate or Trust Certificates, the Trustee shall cancel and destroy the Trust Certificate surrendered to it in connection with such Transfer.  The Trustee shall consider the person in whose name any Trust Certificate is registered on the official record as the sole Beneficiary of the beneficial interest in the Trust Property evidenced by such Trust Certificate.

(c)     As a condition precedent to any registration of Transfer, the Trustee may require the payment of a sum sufficient to cover the payment of any fees or other charges required to be paid in connection with such Transfer.

3.3     **Lost, Stolen, Mutilated or Destroyed Certificates.** If (i) any mutilated Trust Certificate is surrendered to the Trustee, or (ii) the Trustee receives evidence to its satisfaction that any Trust Certificate has been destroyed, lost or stolen, and upon proof of ownership satisfactory to the Trustee together with such security or indemnity as may be requested by the Trustee to save it harmless, the Trustee shall execute and deliver a new Trust Certificate for the same Ownership Percentage as the Trust Certificate so mutilated, destroyed, lost or stolen, of like tenor and bearing a different issue number, with such notations, if any, as the Trustee shall determine.

3.4     **Limitations on Transfer of Trust Certificate.**  No Transfer of a beneficial interest in the Trust shall be made to any person unless such person delivers to the Trustee an Accession Agreement substantially in the form of Exhibit 2 attached and incorporated herein by reference.

3.5     **Assignment of Right to Distributions.**  A Beneficiary may assign all or any part of its right to receive distributions, but such assignment (in the absence of a permitted Transfer) shall cause no change in the ownership of the Ownership Interest (excepting only such assigned right to receive distributions) the Trust or the Trust Property.

## ARTICLE IV

### CONCERNING THE BENEFICIARY

**4.1    Restrictions on Beneficiary's Actions.**    Each Beneficiary shall comply with all applicable provisions of law and this Agreement in the manner necessary to effect the intention of the parties that legal title to Trust Property shall rest with the Trustee and that beneficial and equitable title shall rest in the Beneficiary according to the Ownership Percentage.  Beneficiary shall enjoy all the benefits and attributes of beneficial ownership of Trust Property.

**4.2    Other Expenses, Liabilities of the Trust.**  The Beneficiary shall be liable for obligations related to the Trust Property; provided, however, if the Trust has more than one Beneficiary, each Beneficiary shall be liable solely for the Trust Property in which the Beneficiary holds a Beneficial Ownership Interest.  Within ten business days of receipt of a statement delivered by the Trustee to the effect that amounts necessary to pay expenses or to meet any obligation of the Trust related to the Trust Property, and setting forth the basis for such expenses and such Beneficiary's allocable share of such expenses, each Beneficiary shall deliver to the Trustee immediately available funds in the amount of such Beneficiary's allocable share of such expenses.  The Beneficiary shall be liable for all obligations incurred by the Trustee in the performance of his duties hereunder, including, but not limited to, the payment of all fees and expenses incurred by the Trustee in the performance of his duties hereunder: provided, however, if the Trust has more than one Beneficiary, each Beneficiary shall be liable solely for its allocable share of such expenses, and each Beneficiary shall deliver to the Trustee immediately available funds in the amount of such Beneficiary's allocable share of such expenses.

## ARTICLE V

### CONCERNING THE TRUSTEE

**5.1    Status.**  Trustee represents and warrants that it is a "citizen of the United States of America" within the meaning of Title 49, Section 40102(a)(15) of the United Stated Code.

**5.2    Acceptance of Trustee and Duties.**  The Trustee accepts the trust created and accepts legal title as Trustee to the Trust Property. The Trustee agrees to perform its duties upon the terms of this Agreement.  The Trustee shall not be personally liable under any circumstances, except (i) for its own willful misconduct or gross negligence, (ii) for liabilities arising from the failure by the Trustee to perform obligations expressly undertaken by it in the last sentence of Section 6.7, or (iii) for taxes, fees or other charges on, based on or measured by any fees, commissions or compensation received by the Trustee in connection with any of the transactions contemplated by this Agreement or a Trust Property Related Agreement.  Pursuant to Wyoming Statute Section 14-23-105, the Trustee shall not be held to a more rigorous standard of care than that imposed upon directors of a business corporation under the Wyoming Business Corporation Act.  In particular, but not by way of limitation:

(a)    The Trustee shall not be liable for any error of judgment made in good faith by an Authorized Officer of the Trustee;

(b)   The Trustee shall not be liable with respect to any action taken or omitted to be taken by the Trustee in good faith in accordance with the instructions of the persons holding all of the beneficial Ownership Interest.

(c)   No provision of this Agreement shall require the Trustee to expend or risk its personal funds or otherwise incur any financial liability in the performance of any of its rights or powers hereunder, if the Trustee shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

(d)   Under no circumstances shall the Trustee be personally liable for any indebtedness of the Trust under any Trust Property Related Agreement; and

(e)   The Trustee shall not be personally responsible for or in respect of the validity or sufficiency of this Agreement or for the due execution hereof by the Grantor, or for the form, character, genuineness, sufficiency, value or validity of any collateral, or for or in respect of the validity or sufficiency of a Trust Property Related Agreement.

**5.3    Furnishing of Documents.**  The Trustee shall send to the Beneficiary, promptly upon receipt thereof, duplicates or copies of all material reports, notices, requests, demands, certificates, financial statements and any other instruments received by the Trustee hereunder (other than documents originated by or otherwise furnished to the Beneficiary).

**5.4    Reliance; Advice of Counsel.**

(a)   The Trustee shall incur no liability to anyone in acting upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper believed by it to be genuine or believed by it to be signed by the proper party or parties. The Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect.  As to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, the Trustee may for all purposes hereof rely on a certificate, signed by the president or any vice president or by the treasurer or any assistant treasurer or the secretary or any assistant secretary of the relevant party, as to such fact or matter, and such certificate shall constitute full protection to the Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon.

(b)   In the exercise or administration of the Trust hereunder and in the performance of its duties and obligations under any of the Trust Property Related Agreement, the Trustee (i) may act directly or, at the expense of the Trust, through agents or attorneys pursuant to agreements entered into with any of them, and the Trustee shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys shall have been selected by the Trustee with reasonable care; and (ii) may, at the expense of the Trust, consult with counsel, accountants and other skilled persons to be selected with reasonable care, and the Trustee shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel, accountants or other skilled persons.

page 9 of 24

**5.5    Not Acting in Individual Capacity.**  In accepting the trusts hereby created the Trustee acts solely as a Trustee and not in its individual capacity, and all persons having any claim against the Trustee by reason of the transactions contemplated by this Agreement or any Trust Property Related Agreement shall look only to the Trust Property for payment or satisfaction.

**5.6    Indemnification.**  Pursuant to Wyoming Statute Section 17-23-121 the Trust shall indemnify each of its Trustee, and its officers, employees and agents and other persons designated by the Trustee to receive such indemnification, against all liabilities and expenses (including, without limitation, amounts paid in satisfaction of judgments, in compromise of as fines and penalties, and counsel fees) reasonably incurred by him in connection wit the defense or disposition of any action, suit or other proceeding by the Trust or any other person, whether civil or criminal , in which he may be involved or with which he many be threatened, while in office or thereafter, by reason of his being or having been such a Trustee, officer, employee, agent or otherwise designated person except as to any matter as to which he shall have been adjudicated to have acted with willful misconduct or gross negligence, provided, however, that the provisions of the Section shall not be construed to permit the indemnification of any agent of the Trust with respect to breaches by it of a contract between it and the Trust: and further provided, however, that as to any matter disposed of by a compromise payment by such Trustee, officer, employee, agent, or otherwise designated Person, no indemnification either for said payment or for any other expense shall be provided unless the Trust shall have received a written opinion from independent counsel approved by the Trustee to the effect that if the foregoing matters had been adjudicated, the defenses that could have been presented on behalf of such Trustee, officer, employee, agent or otherwise designated Person were meritorious.  The Trustee may make advance payments in connection with the indemnification under this paragraph provided that the indemnified Trustee, officer, employee, agent or othewise designated person shall have given a written undertaking to reimburse the Trust in the event that it its subsequently determined that he is not entitled to such indemnification.  Any action taken by, or conduct on the part of the Trustee, and officer, or an employee of the Trust in conformity with, or in good faith reliance upon, the provisions of Section 5.4 hereof shall not, for the purpose of this Declaration of Trust constitute willful misconduct, or gross negligence.

## ARTICLE VI

## AUTHORITY AND DUTIES OF THE TRUSTEE

**6.1    General Authority.**  The Trustee is authorized to take all actions required or permitted to be taken by it pursuant to the terms of this Agreement and any Trust Property Related Agreement.

**6.2    Specific Authority.**  The Trustee is hereby authorized and directed to take the following action:

(a)    Hold legal title to all Trust Property;

(b)    To accept and to return the legal title to any aircraft placed into the Trust as Trust Property by the Grantor or successor Beneficiary only from or to the Grantor or successor Beneficiary of record at the time of such title passage.

(c)    Take all actions which the Trustee deems necessary or advisable to register any Aircraft which comprises a portion of the Trust Property with the United States Federal Aviation

Administration and to insure that such Aircraft maintains its registration and complies with related regulations and requirements.

(d)     Collect and dispense funds as described in this Agreement and any Trust Property Related Agreement.

**6.3**     **Trustee Duties.** It shall be the duty of the Trustee to discharge all of its responsibilities pursuant to the terms of this Agreement and to administer the Trust for the interest of the Beneficiary. Trustee shall have the right to grant to the Beneficiary the independent power to manage, control and maintain the Trust Property in all things except those matters subject to the exclusive authority of the Trustee referred to in Sections 6.1 and 6.2.

**6.4**     **Limitations on Trustee Authority.**

(a)     Subject to paragraph (b) of this Section 6.4, the Beneficiary will have no rights or powers to direct, influence or control the Trustee in the performance of the Trustee's duties under this Trust Agreement in connection with matters involving the ownership and operation of the Aircraft by the Trustee. In all matters involving the ownership and operation of the Aircraft by the Trustee, the Trustee shall have absolute and complete discretion in connection therewith and shall be free of any kind of influence or control whatsoever by the Beneficiary, and the Trustee shall exercise its duties under this Trust Agreement in connection with matters involving the ownership and operation of the Aircraft by the Trustee as it, in its discretion, shall deem necessary to protect the interests of the United States, notwithstanding any countervailing interest of any foreign power which, or whose citizens, may have a direct or indirect interest in the Beneficiary and any such action by the Trustee shall not be considered malfeasance or in breach of any obligation which the Trustee might otherwise have to the Beneficiary; provided, however, that subject to the foregoing limitations, the Trustee shall exercise its discretion in all matters involving the ownership and operation of the Aircraft by the Trustee with due regard for the interests of the Beneficiary.

(b)     Subject to the requirements of the preceding paragraph (a), the Trustee shall endeavor to seek the prior written consent of the Beneficiary prior to entering into any agreement to; (i) sell, mortgage, pledge or otherwise dispose of the Aircraft or other assets held in the Trust relating thereto except as otherwise expressly provided in this Agreement, or (ii) amend any Lease or other Operating Agreement or give any consents. With respect to intent of this paragraph, it is not to be interpreted that the Trustee must have the written consent of beneficiary to act with respect to the sale, disposal, or encumbrance actions contained herein; however, Trustee reserves the right to require the Beneficiary to give written consent to act in such matters if Trustee determines that such written consent is in the best interest of the Grantor and/or Beneficiary and/or Trustee.

**6.5**     **Accounting and Reports to the Beneficiary and Others.** The Trustee shall (i) maintain or cause to be maintained the financial books of the Trust relating to the receipt and disbursement of all funds received or disbursed by the Trustee, and (ii) deliver to each Beneficiary within 90 days of the end of each Fiscal Year, or more often, as may be required by applicable law, a copy of the annual financial statement of the Trust for such Fiscal Year and a statement in such form and containing such information

and requirements as the beneficiary has appraised the Trustee in writing are necessary and appropriate to enable each Beneficiary to prepare its tax returns.

     **6.6**    **Signature of Returns.**  The Trustee shall sign on behalf of the Trust any tax returns, annual return, and other Periodic Filings of the Trust, unless applicable law requires a Grantor or Beneficiary to sign such documents, in which case, the designated person shall sign such document.

     **6.7**   **Notice to Beneficiary.**  In the event that the Trustee is unable to decide between alternative courses of action, or is unsure as to the application of any provision of this Agreement or any Trust Property Related Agreement, or such provision is ambiguous as to its application, or is, or appears to be, in conflict with any other applicable provision, or in the event that this Agreement or any Trust Property Related Agreement permits any determination by the Trustee or is silent or is incomplete as to the course of action which the Trustee is required to take with respect to a particular set of facts, the Trustee may give notice (in such form as shall be appropriate under the circumstances) to the Beneficiary requesting instructions and, to the extent that the Trustee shall have acted or refrained from acting in good faith in accordance with any instructions received from the holder of all of the beneficial Ownership Interest, the Trustee shall not be liable on account of such action or inaction to any person. If the Trustee shall not have received appropriate instructions within ten days of such notice (or within such shorter period of time as may be specified in such notice) the Trustee may, but shall be under no duty to, take or refrain from taking such action, not inconsistent with this Agreement or the Trust Property Related Agreement, as the Trustee shall deem to be in the best interests of the Beneficiary, and the Trustee shall have no liability to any person for such action or inaction.

     **6.8**    **No Duties Except as Specified in This Agreement or in Instructions.**  The Trustee shall not have any duty or obligation to manage, make any payment in respect of, record or otherwise deal with the Trust Property, or to otherwise take or refrain from taking any action under, or in connection with, any document contemplated hereby to which the Trustee is a party, except as expressly provided by the terms of this Agreement and no implied duties or obligations shall be read into this Agreement against the Trustee. The Trustee nevertheless agrees that it will, at its own cost and expense, promptly take all action as may be necessary to discharge any liens on any part of the Trust Property which result from claims against the Trustee personally that are not related to the ownership or the administration of the Trust Property or the transactions contemplated by the Trust Property Related Agreement.

     **6.9**    **No Action Except Under Specified Documents or Instructions.**  The Trustee shall not manage, control, use, sell, dispose of or otherwise deal with any part of the Trust Property except (i) in accordance with the powers granted to and the authority conferred upon the Trustee pursuant to this Agreement, and (ii) in accordance with instructions delivered to the Trustee pursuant to Section 6.7 hereof. .

**ARTICLE VII**

**COMPENSATION OF TRUSTEE**

     **7.1**    **Trustee's Fees and Expenses.**  The Trustee shall receive compensation for its services as set forth on the fee schedule attached as Exhibit 3. The Trustee shall be entitled to be reimbursed for its reasonable expenses, including, without limitation, the reasonable compensation, expenses and

page 12 of 24

disbursements of such agents, representatives, experts and counsel as the Trustee may employ in connection with the exercise and performance of its rights and duties under this Agreement and Trust Property Related Agreement.

**7.2     Lien on Trust Property.**  The Trustee shall have and is hereby granted a lien on the Trust Property, and the Trust Certificate and the represented Ownership Interest, for any compensation or expenses and indemnity due, and this lien shall be prior to all other liens.

**7.3     Payments to the Trustee.**  Any amounts paid to the Trustee from the Trust Property shall be deemed not to be part of the Trust Property immediately after such payment.

## ARTICLE VIII

## INVESTMENT AND APPLICATION OF TRUST FUNDS

**8.1     Investment of Trust Funds.**  Income with respect to and proceeds of the Trust Property which are received by the Trustee more than one day prior to a Distribution Date shall be invested and reinvested by the Trustee. All such investments shall have a maturity date no later than the Business Day preceding the next Distribution Date unless they are redeemable at the option of the Trustee prior to maturity. Interest earned from such investment and reinvestment shall be credited to the Trust Property.

**8.2     Allocations and Distributions.**

(a)     Income with respect to and proceeds of Trust Property held by the Trustee on a Distribution Date shall be distributed by the Trustee on such Distribution Date in the following order:

(i)     first, pay any amounts due to the Trustee under this Agreement;

(ii)    second, to pay any amounts then due to any person under any Trust Property Related Agreement; and

(iii)   third, to pay any other expenses associated with the Trust Property.

(b)     Income and proceeds with respect to the Trust Property held by the Trustee on a Distribution Date after the application of funds pursuant to Section 8.2(a) shall be distributed on such Distribution Date to the Beneficiaries holding beneficial Ownership Interest in the Trust Property, in proportion to their respective Ownership Percentages, determined as of the close of business on the Business Day immediately preceding such Distribution Date, and adjusted to take into consideration the duration that the Beneficiary has held the Ownership Percentage. All payments to be made under this Agreement by the Trustee shall be made only from the income and proceeds of the Trust Property and only to the extent that the Trustee has received such income and proceeds.

(c)     With each distribution to a Beneficiary pursuant to Section 8.2(b) above, the Trustee shall deliver a Distribution Date Statement setting forth, for the period since the preceding Distribution Date:

(i)     income and proceeds received by the Trustee with respect to the Trust Property;

page 13 of 24

      (ii)      amounts paid to the Trustee;

      (iii)     amounts paid to any person pursuant to a Trust Property Related Agreement; and

      (iv)     amounts paid for other expenses associated with the Trust Property.

(d)     Each net item of income, gain, loss, deduction, credit or allowance for any fiscal year, or applicable portion thereof, shall be allocated to the Beneficiary in the ratio of its Ownership Percentage in the Trust. In the event that any tax is imposed on the Trust, such tax shall be charged against amounts otherwise distributable to the Beneficiaries on a pro rata basis according to the Ownership Percentage. The Trustee is hereby authorized to retain from amounts otherwise distributable to the Beneficiaries sufficient funds to pay or provide for the payment of, and to actually pay, such tax as is legally owed by the Trust (but such authorization shall not prevent the Trustee from contesting any such tax in appropriate proceedings, and withholding payment of such tax, if permitted by law, pending the outcome of such proceedings).

**8.3**    **Method of Payment.** All amounts payable to a Beneficiary pursuant to this Agreement shall be paid by the Trustee to such Beneficiary or a nominee therefor by check payable to such Beneficiary, mailed first class to the address of such Beneficiary appearing on the register maintained pursuant to Section 3.2, or by crediting the amount to be distributed to such Beneficiary to an account maintained by such Beneficiary with the Trustee or by transferring such amount by wire transfer in immediately available funds to a banking institution with bank wire transfer facilities for the account of such Beneficiary, as instructed in writing from time to time by such Beneficiary. The Trustee may require a Beneficiary to pay any wire transfer fees incurred in connection with any wire transfer made to such Beneficiary.

## ARTICLE IX

## TERMINATION OF TRUST

**9.1**    **Termination of Trust.** The Trust created hereby shall terminate and the Trust Property shall be distributed to the Beneficiary in accordance with their respective Ownership Percentages, and this Agreement shall be of no further force or effect, upon the earliest of (i) the final distribution by the Trustee of all moneys or other property or proceeds of the Trust Property in accordance with the terms of this Agreement and the Trust Property Related Agreement, (ii) a decision by the Trustee that termination of the Trust will be in the best interests of the Beneficiary, or (iii) the removal or resignation of the Trustee without the appointment of a successor Trustee. Otherwise the Trust shall have perpetual existence pursuant to Wyoming Statute Section 17-23-112.

**9.2**    **No Termination by Grantor or Beneficiary.** Except as provided in Section 9.1, neither the Grantor nor the Beneficiary shall be entitled to terminate or revoke the Trust established hereunder.

**9.3**    **Exercise of Trust Powers After Termination.** After termination of the Trust as provided in Section 9.1, Trustee shall have no authority or power to act on behalf of the Trust.

**ARTICLE X**

**SUCCESSOR TRUSTEES AND ADDITIONAL TRUSTEES**

**10.1   Resignation or Removal of Trustee; Appointment of Successor.**

a)      The Trustee may resign and appoint a successor Trustee at any time by giving the Beneficiary at least 60 days prior written notice before the effective date of Trustee's resignation given in the notice, such resignation to be effective upon the acceptance of appointment by a successor Trustee under Section 10.1(b) below or on the effective date of resignation stated in the Trustee's sixty day written notice to the Beneficiary if a successor Trustee has not been appointed by the Beneficiary or a court of competent jurisdiction.  In addition, the Beneficiary holding one hundred percent of the Ownership Percentage, at any time, may remove the Trustee, for cause only (said cause to be determined by Wyoming District Court, 9th Judicial District or if applicable a United States District Court, District of Wyoming or other court with jurisdiction over the Trustee) by an instrument in writing delivered to the Trustee, such removal to be effective upon the acceptance of appointment by a successor Trustee under Section 10.1(b) and 10.1(c), below.  In case of the resignation or removal of the Trustee, the Beneficiary may appoint a successor Trustee by an instrument signed by the holder(s) of one hundred percent of the Ownership Percentage.  If a successor Trustee shall not have been appointed within 30 days after the giving of written notice of such resignation or the delivery of the written instrument with respect to such removal, the Trustee or the Beneficiary may apply to any court of competent jurisdiction to appoint a successor Trustee to act until such time, if any, as a successor Trustee shall have been appointed as provided above.  Any successor Trustee so appointed by such court shall immediately and without further act be superseded by any successor Trustee appointed as above provided within one year from the date of the appointment by such court.

(b)      Any successor Trustee, however appointed, shall execute and deliver to the predecessor Trustee an instrument accepting such appointment, and thereupon such successor Trustee, without further act, shall become vested with all the estates, properties, rights, powers, duties and trust of the predecessor Trustee in the Trust with like effect as if originally named the Trustee; but nevertheless, upon the written request of such successor Trustee, such predecessor Trustee shall execute and deliver an instrument transferring to such successor Trustee all the estates, properties, rights, powers, duties and trusts of such predecessor Trustee, and such predecessor Trustee shall duly assign, transfer, deliver and pay over to such successor Trustee all moneys or other property then held or subsequently received by such predecessor Trustee upon the Trust.

(c)      If the successor Trustee is not a United States citizen, then the successor Trustee shall take appropriate action to change the registration of title to Aircraft included as Trust Property to the country in which the successor Trustee qualifies for registration.  For purposes of this Agreement, United States citizen means (i) an individual who is a citizen of the United States, (ii) a partnership of which each member is such an individual, or (iii) a corporation or association created or organized under the laws of the United States or of any state, territory, or possession of the United States, of which the president and two-thirds or more of the board of directors and other managing officers thereof are such individuals and in which at least seventy-five percent (75%) of the voting interest is owned or controlled by persons who are citizens of the United States or of one of its possessions.

page 15 of 24

(d)     Any corporation or limited liability company into which the Trustee may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any corporation to which substantially all of the corporate trust business of the Trustee may be transferred, shall, subject to the terms of Section 10.1(c), be the Trustee under this Agreement without further act.

**10.2    Appointment of Additional Trustees.**  At any time or times for the purpose of meeting any legal requirements of any jurisdiction in which any part of the Trust Property may at the time be located, the Trustee, by an instrument in writing, may appoint one or more individuals or corporations to act as separate trustee of all or any part of the Trust Property to the full extent that local law makes it necessary or appropriate for such separate trustee or separate trustees to act alone.

## ARTICLE XI

## MISCELLANEOUS

**11.1    Supplements and Amendments.**  This Agreement may be amended only by a written instrument signed by the Trustee and all of the Beneficiaries at the time of such amendment; provided, however, that if, in the opinion of the Trustee, any instrument required to be so executed adversely affects any right, duty or liability of, or immunity or indemnity in favor of, the Trustee under this Agreement or any of the documents contemplated hereby to which the Trustee is a party, or would cause or result in any conflict with or breach of any terms, conditions or provisions of, or default under, the charter documents or by-laws of the Trustee or any document contemplated hereby to which the Trustee is a party, the Trustee may in its sole discretion decline to execute such instrument.

**11.2    Legal Title to Trust Property in Trustee.**  The Trustee shall have legal title to the Trust Property and Beneficiary shall only have an undivided beneficial and equitable Ownership Interest therein.  No transfer, by operation of law or otherwise, of any right, title or interest of the Beneficiary in and to its undivided beneficial interest in the Trust Property shall operate to terminate this Agreement or the trust or entitle any successor transferee to an accounting or to the transfer to it of legal title to any part of the Trust Property.

**11.3    Contracts Made by Trustee.**  Upon receipt of written consent of the Beneficiaries, the Trustee has authority to execute any Trust Property Related Agreement and any documents provided for therein, and such action shall bind the Beneficiary and shall be effective to obligate the Trustee and the Beneficiary to the extent set forth in such Trust Property Related Agreement.  No third party shall be required to inquire as to the authorization, necessity, expediency or regularity of such action or as to the application of any proceeds by the Trustee.

**11.4    Limitations on Rights of Others.**  Nothing in this Agreement, whether express or implied, shall be construed to give to any person other than the Trustee and the Beneficiary any legal or equitable right, remedy or claim in the Trust Property or under or in respect of this Agreement or any covenants, conditions or provisions contained herein.

**11.5    Notices.**  Unless otherwise expressly specified or permitted by the terms hereof, all notices shall be in writing and delivered by hand or mailed by certified mail, postage prepaid, if to the Trustee, addressed to:  Aircraft Guaranty Corporation, POB 2549 (2058 FM 356 North), Onalaska,

Texas 77360, or to such other address as the Trustee may have set forth in a written notice to the Beneficiary; and if to a Beneficiary, addressed to it at the address set forth for the Beneficiary in the register maintained by the Trustee.

    **11.6     Severability.** Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

    **11.7     Separate Counterparts.** This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

    **11.8     Successors and Assigns.** All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Trustee and its successors and assigns, and each Beneficiary and its successors and permitted assigns, all as herein provided. Any request, notice, direction, consent, waiver or other instrument or action by a Beneficiary shall bind the successors and assigns of such Beneficiary.

    **11.9     Headings.** The headings of the various articles and sections are for convenience of reference only and shall not define or limit any of the terms or provisions.

    **11.10   Not Influenced by Beneficiaries or any other persons who are not U.S. Citizens or Resident Aliens.** Notwithstanding anything to the contrary in this Agreement, the Trustee and the Beneficiary hereby agree as follows:

    If persons who are neither U.S. Citizens or resident aliens have the power to direct or remove the Trustee, either directly or indirectly through the control of another person, those persons shall not have more than twenty-five percent (25%) of the aggregate power to direct or remove the Trustee.

    **11.11   Governing Law.** This Declaration of Trust is adopted by the Grantor and Trustee and delivered in the State of Wyoming and with reference to the laws thereof, and the rights of all parties and the validity, construction and effect of every provision hereof shall be subject to and construed according to the laws of the said State of Wyoming.

    **11.12   Grantor Compliance with US Law.** Grantor affirms that it is in full compliance with all laws and regulations applicable to it including, without limitation, (a) ensuring that no person who owns a controlling interest in or otherwise controls Grantor is or shall be (1) listed on the Specially Designated Nationals and Blocked Person List maintained by the Office of Foreign Assets Control ("OFAC"), Department of the Treasury, and/or any other similar lists maintained by OFAC pursuant to any authorizing statute, Executive Order or regulation or (2) a person designated under Section 1(b), (c), or (d) of Executive Order No. 13224 (September 23, 2001), any related enabling legislation or any other similar Executive Orders.

**11.13  Merger of Trusts.** After notice to the Beneficiaries, a Trustee may combine two (2) or more trusts into a single trust or divide a trust into two (2) or more separate trusts, if the result does not impair the rights of any beneficiary or adversely affect achievement of the purposes of the trust.

///////THE  REMAINDER  OF  THIS  PAGES  IS  INTENTIONALLY  LEFT  BLANK///////

**IN WITNESS WHEREOF**, the parties have caused this Trust Agreement for Continent Aircraft Statutory Trust No. 2152 to be duly executed by their respective officers, as of the day and year first above written.

Aircraft Guaranty Corporation, Trustee

By: _____
Dr. Connie L. Wood
President

Aircraft Guaranty Financial Corporation, Grantor

By: _____
Mary Wood
Vice President

page 19 of 24

Exhibit 1 to
Trust Agreement

Continent Aircraft Statutory Trust NO. 2152

TRUST CERTIFICATE

UNDER TRUST AGREEMENT DATED _____

Certificate No. 1        _____ Date

Aircraft Guaranty Corporation, a Wyoming corporation, as trustee (the "Trustee") under a Trust Agreement dated _____ with Aircraft Guaranty Financial Corporation (the "Grantor"), hereby certifies that Aircraft Guaranty Financial Corporation, is the owner of a 100% undivided beneficial interest in the Trust Property provided for in the Trust Agreement. This Trust Certificate shall serve as evidence that the Beneficiary is the registered owner of the Ownership Percentage stated above.

Capitalized terms used herein without definition have the meanings ascribed to them in the Trust Agreement.

Transfer of the beneficial Ownership Interest represented by this Trust Certificate is subject to certain restrictions and limitations set forth in the Trust Agreement. This Trust Certificate may be transferred upon the books of the Trust by the registered Beneficiary in person or by an attorney duly authorized in writing upon surrender of this Trust Certificate to the Trustee accompanied by a written instrument of transfer and with such evidence of authority of the persons signing the instrument of transfer as the Trustee may reasonably require, whereupon the Trustee shall issue in the name of the transferee a Trust Certificate or Trust Certificates evidencing the amount and extent of interest of the transferee.

The Beneficiary, by its acceptance of this Trust Certificate, warrants and represents to the Trustee and to the Beneficiaries of the other Trust Certificates issued under the Trust Agreement and agrees not to transfer this Trust Certificate except in accordance with the Trust Agreement.

This Trust Certificate and the Trust Agreement shall in all respects be governed by, and construed in accordance with the laws of the State of Wyoming.

IN WITNESS WHEREOF, the Trustee has caused this Trust Certificate to be issued as of the date hereof.

Aircraft Guaranty Corporation,
AS TRUSTEE

By: _____
        Dr. Connie L. Wood
        President

page 20 of 24

Exhibit 1A to
Trust Agreement

Continent Aircraft Statutory Trust NO. 2152
TRUST CERTIFICATE

UNDER TRUST AGREEMENT DATED _____

Certificate Number: _____          _____
                                              (Date Issued)

Aircraft Guaranty Corporation, a Wyoming corporation, as trustee (the "Trustee") under a Trust Agreement dated _____ with Aircraft Guaranty Financial Corporation (the "Grantor"), hereby certifies that _____ ("Beneficiary") is the owner of a _____% undivided beneficial interest in the Trust Property provided for in the Trust Agreement. This Trust Certificate shall serve as evidence that the Beneficiary is the registered owner of the Ownership Percentage stated above.

Capitalized terms used herein without definition have the meanings ascribed to them in the Trust Agreement.

Transfer of the beneficial Ownership Interest represented by this Trust Certificate is subject to certain restrictions and limitations set forth in the Trust Agreement. This Trust Certificate may be transferred upon the books of the Trust by the registered Beneficiary in person or by an attorney duly authorized in writing upon surrender of this Trust Certificate to the Trustee accompanied by a written instrument of transfer and with such evidence of authority of the persons signing the instrument of transfer as the Trustee may reasonably require, whereupon the Trustee shall issue in the name of the transferee a Trust Certificate or Trust Certificates evidencing the amount and extent of interest of the transferee.

The Beneficiary, by its acceptance of this Trust Certificate, warrants and represents to the Trustee and to the Beneficiaries of the other Trust Certificates issued under the Trust Agreement and agrees not to transfer this Trust Certificate except in accordance with the Trust Agreement.

This Trust Certificate and the Trust Agreement shall in all respects be governed by, and construed in accordance with the laws of the State of Wyoming.

IN WITNESS WHEREOF, the Trustee has caused this Trust Certificate to be issued as of the date hereof.

Aircraft Guaranty Corporation,
AS TRUSTEE

By: _____
        Dr. Connie L. Wood
        President

page 21 of 24

Exhibit 2 to
Trust Agreement

FORM OF ACCESSION AGREEMENT

Aircraft Guaranty Corporation
POB 2549 (2058 FM 356 North
Onalaska, Texas 77360

Dear Sirs:

       The undersigned (herein referred to as "Beneficiary," whether one or more) refers to the Trust Agreement, dated _____ (the "Trust Agreement"), between Aircraft Guaranty Financial Corporation, a Nevada Corporation, and Aircraft Guaranty Corporation, a Wyoming corporation (in its capacity as trustee thereunder, the "Trustee"). Beneficiary proposes to acquire a beneficial interest in Continent Aircraft Statutory Trust No. 2152, a trust organized under the laws of the State of Wyoming (the "Trust") formed pursuant to the Trust Agreement. As part of the consideration for receiving the beneficial interest in the Trust and Trust Property, Beneficiary has agreed to contribute and transfer to the Trust interest in the Aircraft described below and to pay certain fees. Capitalized terms used herein without definition have the meanings given them in the Trust Agreement.

       In consideration for the receipt of the Trust Certificate, Beneficiary hereby transfers or has arranged for the transfer to the Trustee, the legal title to the following described Aircraft, or Beneficiary hereby instructs Trustee to acquire for the benefit of the Beneficiary the following described Aircraft:

| | |
|---|---|
| Manufacturer/Model | _____ |
| Manufacturer Serial No. | _____ |
| FAA Registration No. | _____ |
| Agreed value on transfer to Trustee | $_____ |

as more particularly described in Appendix "A."

       Beneficiary acknowledges that Beneficiary is acquiring the Trust Certificate for Beneficiary's own account and not for the benefit of any other person and not with a view to any distribution of the beneficial interest in the Trust, subject, nevertheless, to the understanding that disposition of the specified Trust Property shall at all times be subject to the Trust Agreement.

      3.     The Beneficiary shall be responsible for arranging for the payment of expenses related to the Trust Property, including any debt service on notes or leases secured by the Trust Property; provided, however, if the Trust has more than one Beneficiary, each Beneficiary shall be liable for its share according to the Ownership Percentage. Within ten business days of receipt of a statement delivered by the Trustee to the effect that amounts necessary to pay expenses or to meet any obligation of the Trust related to the Trust Property, and setting forth the basis for such expenses and such Beneficiary's allocable share of such expenses, each Beneficiary shall deliver to the creditor or obligee immediately available funds in the amount of such Beneficiary's allocable share of such expenses.

      4.     Beneficiary agrees that in the event of a future Transfer of the beneficial interest in the Trust, such Transfer shall be made in conformity to the following:

      (a)     this letter is executed promptly by such transferee, and

      (b)     if the Trust has more than one Beneficiary, the Beneficiaries representing a majority of the Ownership Percentage, excluding the interest of the transferring Beneficiary, shall have provided written consent to the Transfer.

      Beneficiary agrees to be bound by all the terms and conditions of Trust Agreement.

Very truly yours,

Beneficiary

Accepted and Acknowledged this
_____ day of _____, 20____.

Aircraft Guaranty Corporation,
as Trustee

By:_____
        Dr. Connie L. Wood
        President

page 23 of 24

EXHIBIT 3 TO
TRUST AGREEMENT

SCHEDULE OF TRUSTEE FEES

Fees and charges to be paid by the Trust to Aircraft Guaranty Holdings, on behalf of Aircraft Guaranty Corporation as Trustee of the Trust known as the Continent Aircraft Statutory Trust No. 2152 created by the execution of the Trust Agreement dated _____, shall be in the annual amount of $_____ U.S. Dollars, payable in advance yearly by December 31 for services to be rendered in the coming year during the term of the Trust.

Accepted and acknowledged this ____ day of _____, 20____.

Aircraft Guaranty Financial Corporation, Grantor

By: _____
Name:  Dr. Connie L. Wood
Title:  President



# FLORIDA OFFICE OF FINANCIAL REGULATION

**DREW J. BREAKSPEAR**
COMMISSIONER

CERTIFICATE NO. 13-F-128

November 15, 2013

CERTIFICATE

I, the undersigned, Custodian of the Records, State of Florida, Office of Financial Regulation, do hereby certify:

The Office of Financial Regulation issues all licenses to conduct business in the State of Florida under the provisions of Chapter 560, Florida Statutes. A diligent search of the records of the Office reveals that it has no record of licensure, under the provisions of Chapter 560, Florida Statutes, for the following entities or persons:

Supsebas Corp
Jezuleima Thais Azuaje Gamarra
Jezuleima Azuaje
Jezuleima Azuaje Gamarra
Jezuleima T. Azuaje Gamarra

IN TESTIMONY WHEREOF, I hereto subscribe my name and affix the seal of my office, to this Certificate, No. 13-F-128, at Tallahassee, the day and year first above written.



Brian Hermeling
Office of Financial Regulation

MSB Registrant Search Web page                                                        Page 1 of 1



FinCEN   Financial Crimes Enforcement Network
United States Department of the Treasury

**Search for MSB Registration Status** | **How do I use this Web page?** | **How do I register My MSB?** | **What is BSA E-Filing?** | **Frequently Asked Questions**

## MSB Registrant Search Web page

The MSB Registrant Search Web page contains entities that have registered as Money Services Businesses (MSBs) pursuant to the Bank Secrecy Act (BSA) regulations at 31 CFR 1022.380(a)-(f), administered by the Financial Crimes Enforcement Network (FinCEN).

You cannot register as an MSB on this Web page. All MSB registrations must be completed electronically through the BSA E-Filing System.

The MSB Registrant Search Web page reflects information exactly as provided by the registrant. Posted entries should include: (1) Registrant's legal name, (2) Registrant's "doing business as" name (if applicable), (3) Registrant's address, (4) MSB activities in which the Registrant engages, (5) states in which the Registrant engages in MSB activities, (6) number of branches, (7) date the registration form was signed, and (8) date the registration form was received.

- The MSB Registrant Search Web page is the public information source for MSBs registered with the Financial Crimes Enforcement Network (FinCEN).
- MSB acknowledgement letters will not be sent to MSBs. FinCEN will not provide facsimiles or copies of filed Registration of Money Services Business (RMSB) Form 107s.
- Searches may be performed on individual or multiple fields. Search criteria must be entered exactly as submitted on the Registration of Money Services Business (RMSB) Form 107. Variations in abbreviations or spellings could result in negative search results. If you initially receive a negative search result, please try searching again using the state or zip code field. For best results, please enter an MSB Registration Number.
- Click on the highlighted Legal Name link on the search results page to generate a printable PDF document that contains the registration status information.

System could not find matching data. ←

### How do I search for MSB Registration Information?

 **step 1**  Start by entering complete or partial information in one or more of the search fields.

  Click the [ Search ] button

  On the RESULTS PAGE: click the desired MSB's LEGAL NAME to retrieve its printable registration information

| MSB REGISTRATION NUMBER/DCN | |
| LEGAL NAME | Supsebas Corporation |
| DBA NAME | |
| STREET ADDRESS | 4287 Greenbrier Lane |
| CITY | Weston |
| STATE | [▾] |
| ZIP | 33331 |
| MSB ACTIVITIES (MSB Services Key List) | Money transmitter [▾] |
| STATES OF MSB ACTIVITIES | [▾] |
| FOREIGN LOCATION | [▾] |

[ Search ]   [ Reset ]

View/download all currently registered MSBs in Excel. FinCEN is providing the information contained in the spreadsheet for the benefit of the financial institutions who use this site and requested a media type to integrate into their data processing systems. It is not intended to be a substitute for the information contained on the Web site and should not be relied on in lieu thereof.

The Web site, which is current as of December 13, 2013, contains data on 36,515 registered MSBs*  This is an increase of 78 MSB registrations from the December 06, 2013, total of 36,437.

*On February 22, 2013 7,598 entities were dropped from the MSB Registrant Search Web page for nonrenewal of registration. Entities that continue to provide activities which would require them to be registered with FinCEN but have been dropped from the MSB Registrant Search Web page should renew their registration immediately. MSBs must use FinCEN's BSA E-Filing System to renew their registration

The inclusion of a business on the MSB Registrant Search Web page is not a recommendation, certification of legitimacy, or endorsement of the business by any government agency.

The MSB Registrant Search Web page, which is updated on a weekly basis, contains entities that have registered as Money Services Businesses (MSBs) pursuant to the Bank Secrecy Act (BSA) regulations at 31 CFR 1022.380(a)-(f), administered by the Financial Crimes Enforcement Network (FinCEN).

Information contained on this site has been provided by the MSB registrant. FinCEN does not verify information submitted by the MSB. Information provided on this site reflects only what was provided directly to FinCEN. If an error or incomplete information is detected on this site, the registrant should follow the appropriate instructions for correcting a Registration of Money Services Business (RMSB) form

MSB Registrant Search Web page                                        Page 1 of 1



Search for MSB Registration Status | How do I use this Web page? | How do I register My MSB? | What is BSA E-Filing? | Frequently Asked Questions

## MSB Registrant Search Web page

The MSB Registrant Search Web page contains entities that have registered as Money Services Businesses (MSBs) pursuant to the Bank Secrecy Act (BSA) regulations at 31 CFR 1022.380(a)-(f), administered by the Financial Crimes Enforcement Network (FinCEN).

You cannot register as an MSB on this Web page. All MSB registrations must be completed electronically through the BSA E-Filing System.

The MSB Registrant Search Web page reflects information exactly as provided by the registrant. Posted entries should include: (1) Registrant's legal name, (2) Registrant's "doing business as" name (if applicable), (3) Registrant's address, (4) MSB activities in which the Registrant engages, (5) states in which the Registrant engages in MSB activities, (6) number of branches, (7) date the registration form was signed, and (8) date the registration form was received

- The MSB Registrant Search Web page is the public information source for MSBs registered with the Financial Crimes Enforcement Network (FinCEN).
- MSB acknowledgement letters will not be sent to MSBs. FinCEN will not provide facsimiles or copies of filed Registration of Money Services Business (RMSB) Form 107s.
- Searches may be performed on individual or multiple fields. Search criteria must be entered exactly as submitted on the Registration of Money Services Business (RMSB) Form 107. Variations in abbreviations or spellings could result in negative search results. If you initially receive a negative search result, please try searching again using the state or zip code field. For best results, please enter an MSB Registration Number.
- Click on the highlighted Legal Name link on the search results page to generate a printable PDF document that contains the registration status information.

System could not find matching data.

### How do I search for MSB Registration Information?


step 1

Start by entering complete or partial information in one or more of the search fields



Click the [ Search ] button



On the RESULTS PAGE: click the desired MSB's LEGAL NAME to retrieve its printable registration information

| Field | Value |
|---|---|
| MSB REGISTRATION NUMBER/DCN | |
| LEGAL NAME | Jezuleima Azuaje |
| DBA NAME | |
| STREET ADDRESS | 4287 Greenbriar Lane |
| CITY | Weston |
| STATE | |
| ZIP | 33331 |
| MSB ACTIVITIES (MSB Services Key List) | Money transmitter |
| STATES OF MSB ACTIVITIES | |
| FOREIGN LOCATION | |

[ Search ]   [ Reset ]

View/download all currently registered MSBs in Excel. FinCEN is providing the information contained in this spreadsheet for the benefit of the financial institutions who use this site and requested a media type to integrate into their data processing systems. It is not intended to be a substitute for the information contained on the Web site and should not be relied on in lieu thereof.

The Web site, which is current as of December 13, 2013, contains data on 36,515 registered MSBs*. This is an increase of 78 MSB registrations from the December 06, 2013, total of 36,437.

*On February 22, 2013 7,598 entities were dropped from the MSB Registrant Search Web page for nonrenewal of registration. Entities that continue to provide activities which would require them to be registered with FinCEN but have been dropped from the MSB Registrant Search Web page should renew their registration immediately. MSBs must use FinCEN's BSA E-Filing System to renew their registration.

> The inclusion of a business on the MSB Registrant Search Web page is not a recommendation, certification of legitimacy, or endorsement of the business by any government agency.
>
> The MSB Registrant Search Web page, which is updated on a weekly basis, contains entities that have registered as Money Services Businesses (MSBs) pursuant to the Bank Secrecy Act (BSA) regulations at 31 CFR 1022.380(a)-(f), administered by the Financial Crimes Enforcement Network (FinCEN).
>
> Information contained on this site has been provided by the MSB registrant. FinCEN does not verify information submitted by the MSB. Information provided on this site reflects only what was provided directly to FinCEN. If an error or incomplete information is detected on this site, the registrant should follow the appropriate instructions for correcting a Registration of Money Services Business (RMSB) form.